UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION



JACQUELINE G. BISHOP,    ]
    ]
    Plaintiff(s),    ]
    ]
    vs.    ]    CV-02-CO-0834-S
    ]
LESLIE LENKOWSKY, Chief    ]
Executive Officer,    ]
Corporation for National and    ]
Community Service,    ]
    ]
    Defendant(s).    ]

**ENTERED**

JUL 1 5 2003

MEMORANDUM OF OPINION

## I. INTRODUCTION.

Presently before the court are a motion to dismiss and motion for summary judgment, filed by the defendant on May 30, 2003. [Doc. # 23.] The issues raised in the motions have been fully briefed by the parties, and are now ripe for decision. Upon due consideration, the court is of the opinion that both the motion to dismiss and the motion for summary judgment are due to be granted.

## II. FACTS.[1]

### A. Introduction.

Plaintiff Jacqueline G. Bishop ("Ms. Bishop"), an African-American female, was hired in 1982 by the Corporation for National

---

[1]The facts set out below are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. See Info. Sys. & Networks Corp. v. City of Atlanta, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund, 17 F.3d 1386, 1400 (11th Cir. 1994).



and Community Service ("CNS"), a federal agency that provides opportunities for Americans to engage in service that addresses the nation's educational, public safety, environmental, and other human needs.[2] Her original position with CNS was as a secretary; she was promoted to State Program Specialist for the Department of Planning and Program Integration in 1985, and she remains in that position to date. During Ms. Bishop's fourteen years as a State Program Specialist, she has learned, developed, monitored, and managed all programs administered by her department.

When a vacancy occurs in the position of State Program Director, the Area Manager has the authority to designate someone of her choosing as acting State Program Director. Ms. Bishop has served several short terms and one extended term as acting State Program Director during her tenure with CNS. Ms. Bishop's Area Manager at all relevant times was Judith Russell ("Ms. Russell"). Ms. Bishop alleges that numerous complaints about Ms. Russell's inability to get along with African-American employees were lodged against her while she was the Area Manager, and that Ms. Russell was not reappointed as Area Manager when her two year term expired.

B.   1999 State Program Director vacancies.

On or about May 17, 1999, CNS issued vacancy announcements for the State Program Director positions in the Georgia and Alabama state offices, with dates for submission of applications of May 17,

---

[2]The named defendant, Leslie Lenkowsky, is the Chief Executive Officer for CNS, and is the proper defendant to this action pursuant to 42 U.S.C. § 2000e-16(c).

1999, through June 7, 1999. However, prior to the opening date for applications for these positions, Nancy Reeder ("Ms. Reeder"), a Caucasian female not previously employed by the agency, learned of the Georgia vacancy and applied for that position on April 16, 1999. On April 27, 1999, CNS representatives decided to recruit Ms. Reeder to a five year term as the Alabama State Program Director effective November 15, 1999, despite Ms. Reeder's lack of knowledge of the vacancy and despite the fact that the opening date for accepting applications was not until May 17.

Ms. Bishop applied for the Alabama State Program Director position on June 3, 1999. Ms. Bishop notes that at the time the vacancy announcement was published, she had ten years of direct, hands-on experience with CNS's Alabama programs, while Ms. Reeder had no such experience. Both Ms. Bishop's and Ms. Reeder's applications were rated qualified by CNS's Human Resources Office, and both applications were referred to the Department of Planning and Program Integration. Ms. Bishop was interviewed via telephone by Ms. Russell and Betty Platt ("Ms. Platt"), a Caucasian female; however, she was not interviewed in the second round of interviews. Ms. Reeder was interviewed in the second and third rounds of interviews, and Ms. Russell and Ms. Platt believed she was the top candidate among the applicants.

Ms. Russell recommended Ms. Reeder for Alabama State Program Director because she had "extensive experience with planning,

designing and implementing programs," as well as significant management experience. (Russell Decl. Ex. 1.) Michael Berning ("Mr. Berning"), another CNS representative, spoke with Ms. Reeder by telephone, and he recommended her selection to Gary Kowalczyk ("Mr. Kowalczyk"), the Director of Planning and Program Integration, who, based on the recommendations of Ms. Russell and Mr. Berning, selected Ms. Reeder for the position on October 6, 1999. Ms. Reeder was appointed Alabama State Program Director effective November 14, 1999.

Ms. Bishop filed a complaint of discrimination with the agency on February 23, 2000, alleging that she was not promoted to the State Program Director position in 1999, because of racial discrimination. The eventual result of this complaint was that the agency issued a finding of "no discrimination" on January 15, 2002.

C.    2000 State Program Director vacancy.

Ms. Reeder resigned from her position as State Program Director in December 2000. Therefore, on December 19, 2000, CNS issued a vacancy announcement indicating that the Alabama State Program Director position was available, and applications were accepted from December 19, 2000, through January 9, 2001. Ms. Bishop applied for the position on January 7, 2001. Alfred Johnson ("Mr. Johnson") conducted the initial rating and screening of the applications referred by Human Resources, and the applicants were interviewed by Mr. Johnson and Mr. Berning. Mr. Berning testified

that he believed none of the people interviewed were exceptional or clearly right for the job; however, Ms. Bishop testified that he told her that she appeared to be very well qualified.

Mr. Berning spoke with Mr. Kowalczyk about the applicants, and Mr. Kowalcyzk indicated that CNS was under no pressure to fill the position immediately. Mr. Berning suggested that CNS consider qualified individuals within the organization who had not applied for the position; specifically, Mr. Berning thought Ms. Platt would make an excellent state director. Mr. Berning spoke with Ms. Platt about the job, and she indicated her interest in the position, so he recommended that she be appointed Alabama State Program Director. Mr. Kowalczyk, who was familiar with Ms. Platt's work for CNS, offered her the position based on her previous accomplishments as Senior Program Officer and her supervisory skills. Ms. Platt was therefore appointed Alabama State Program Director effective January 27, 2002.

On August 23, 2002, Ms. Platt sent an email message to a number of employees notifying them that she would be out of town for one week and that although she would check her email and voice mail regularly, the employees might "find it more productive to contact [Ms.] Bishop, who will be serving as Acting [State Program Director]." (Pl.'s Ex. 21.) The email went on to state, in a

parenthetical concluding with a typographical smiley face,[3] that "that course of action would probably be more productive even were I to be sitting at my desk." (*Id.*) Ms. Bishop interprets this email as an admission by Ms. Platt that Ms. Bishop was more qualified for the State Program Director position than Ms. Platt.

    D.    *Procedural history.*

    Ms. Bishop filed a complaint with CNS on January 18, 2002, alleging racial discrimination in her non-selection for the 2000 State Program Director vacancy; no Final Agency Decision has been issued since that time. Therefore, she filed the instant action on April 2, 2002, alleging race discrimination, retaliation, and prohibited personnel practices. Specifically, the second amended complaint alleges eight claims: (1) a claim alleging a violation of 5 U.S.C. § 2302 in the intentional solicitation and recruitment of individuals for vacant positions; (2) a claim alleging a violation of 5 U.S.C. § 2302 in the intentional grant of preference and advantage to Ms. Reeder and Ms. Platt; (3) a claim alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17; (4) a claim alleging retaliation under Title VII;[4] (5) a claim alleging negligent retention under Alabama law; (6) a claim alleging negligent supervision under Alabama law; (7) a claim for negligent infliction of emotional

---

    [3] :-)

    [4] The claims in counts three and four are asserted under Title VII as well as 42 U.S.C. §§ 1981 and 1983.

distress under Alabama law; and (8) a second claim for negligent infliction of emotional distress under Alabama law.[5]

The defendant filed the instant motions to dismiss and for summary judgment on May 30, 2003. [Doc. # 23.] Specifically, the defendant has moved to dismiss the first and second claims, as well as any claims brought pursuant to 42 U.S.C. §§ 1981 or 1983, for lack of subject matter jurisdiction. The defendant has moved to dismiss all state law claims for failure to state a claim upon which relief may be granted because those claims are preempted by federal law; in the alternative, the defendant has moved for summary judgment as to those claims. Finally, the defendant has moved for summary judgment as to the plaintiff's Title VII claims.

III. STANDARD.

    A.    Motion to dismiss.

        1.    Rule 12(b)(1).

The defendant has moved to dismiss certain of Ms. Bishop's claims for lack of subject matter jurisdiction. "[W]hen a defendant properly challenges subject matter jurisdiction under Rule 12(b)(1) the district court is free to independently weigh facts, and [must] 'satisfy itself as to the existence of its power to hear the case.'" *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).

---

[5]The court is not certain as to the practical difference, if any, between the claims alleged in counts seven and eight of the second amended complaint. The court will therefore consider these claims together for purposes of resolving the instant motions.

The court may consider matters outside the pleadings in ruling on a motion under Rule 12(b)(1). *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991). However, the Eleventh Circuit has cautioned that if the facts necessary to sustain jurisdiction implicate the merits of the plaintiff's cause of action, the court should "find that jurisdiction exists and deal with the [jurisdictional] objection as a direct attack on the merits of the plaintiff's case." *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997). The burden of proof on a Rule 12(b)(1) motion is on the party averring jurisdiction. *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942).

> 2.   Rule 12(b)(6).

The defendant has also challenged the sufficiency of a portion of the second amended complaint under Rule 12(b)(6), which provides for dismissal of a complaint for failure to state a claim upon which relief may be granted. A court may dismiss a complaint under Rule 12(b)(6) only if it appears beyond doubt that the plaintiff can prove no set of facts in support of her claims which would entitle her to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In deciding a Rule 12(b)(6) motion, the court must accept as true all well-pleaded factual allegations and view them in the light most favorable to the plaintiff. *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir. 1988). Furthermore, "[a] complaint may not be dismissed because the plaintiff's claims do not support the legal

theory [she] relies upon since the court must determine if the allegations provide for relief on *any* possible theory." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (emphasis in original) (citing *Robertson v. Johnston*, 376 F.2d 43 (5th Cir. 1967)).

    B.   Motion for summary judgment.

    Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.  DISCUSSION.

A.  Motion to dismiss.

1.  Prohibited personnel practices claims.

The defendant alleges that counts one and two of Ms. Bishop's second amended complaint, alleging prohibited personnel practices under 5 U.S.C. § 2302, are due to be dismissed for lack of subject matter jurisdiction. Specifically, the defendant alleges these claims must be dismissed because Ms. Bishop failed to exhaust applicable administrative remedies.

Congress provided a specific mechanism for protection of the federal employment process under the Civil Service Reform Act ("CSRA"), 5 U.S.C. §§ 1101-1105, 1201-1222. Under the CSRA, allegations that a federal employer's conduct amounts to a personnel practice prohibited under 5 U.S.C. § 2302 must be filed

with the Office of Special Counsel ("OSC") for investigation. 5 U.S.C. § 1214(a)(1)(A). If the OSC determines that there are reasonable grounds to believe that a prohibited personnel practice has occurred, and the agency involved does not take corrective action, the OSC may petition the Merit Systems Protection Board ("the Board") for corrective action. *Id.* § 1214(b)(2)(C). The Board's final order or decision is subject to judicial review. *Id.* § 1214(c)(1). An aggrieved employee obtains such review by filing a petition in the United States Court of Appeals for the Federal Circuit; however, if an employee seeks review of a Board or agency decision in a case involving both prohibited personnel practices and unlawful employment discrimination, the employee may file suit in the appropriate district court. 5 U.S.C. § 7703(b); *see* 42 U.S.C. § 2000e-16(c).

The Eleventh Circuit has held that exhaustion of administrative remedies under the CSRA is a prerequisite to a suit alleging improper action on the part of a federal agency. *See Ferry v. Hayden*, 954 F.2d 658, 661 (11th Cir. 1992). It is undisputed that Ms. Bishop did not file a claim with the OSC. However, she argues that her failure to exhaust administrative remedies under 5 U.S.C. § 1214 is excused because she alleges employment discrimination as well as prohibited personnel practices pursuant to 5 U.S.C. § 7703(b). *See Doyal v. Marsh*, 777 F.2d 1526, 1536 (11th Cir. 1985) (explaining that § 7703(b) allows an employee "to

file a civil action based on [her] mixed case complaint before
resorting to" administrative review by the Board).

However, the court is of the opinion that the cases cited by
Ms. Bishop are inapplicable to the instant case. Specifically,
while *Doyal* and *Mullins v. Crowell*, 228 F.3d 1305 (11th Cir.
2000), provide that an employee who has presented a "mixed case,"
i.e., one involving alleged discrimination *and* violations of the
CSRA, to the agency in question, may bypass the administrative
prerequisites to suit under the CSRA and immediately sue in the
appropriate district court, the court concludes that this holding
is limited by the requirement that the mixed case have been
presented to the agency.[6] It is not enough for the plaintiff to
raise mixed case allegations for the first time in district court;
both the allegations of CSRA violations *and* unlawful discrimination
must have been raised in the complaint to the agency. *See Doyal*,
777 F.2d at 1536 (quoting 5 U.S.C. § 7702(e)(1))("If an agency . .
. does not render a decision on an employee's mixed case complaint
within 120 days, the employee is entitled 'to file a civil action
to the same extent and in the same manner as provided in § 717(c)
of the Civil Rights Act of 1964.'").

---

[6]Indeed, a more recent panel of the Eleventh Circuit has held that the mixed
case allegations must be presented to the Board after being presented to the OSC,
and not just the agency in question, before the plaintiff may seek review in
district court. *See Kelliher v. Veneman*, 313 F.3d 1270, 1274 (11th Cir. 2002).
However, under well established Eleventh Circuit law, the court is bound to follow
the opinion of the earlier panel. *See United States v. Andrews*, 330 F.3d 1305, 1305
(11th Cir. 2003) (citing *Cargill v. Turpin*, 120 F.3d 1366, 1386 (11th Cir. 1997)).

There is no evidence to suggest that Ms. Bishop raised mixed case allegations before CNS. In fact, it appears to the court that Ms. Bishop's complaint to CNS alleged only racial discrimination; thus Ms. Bishop apparently presented her case as a non-mixed case. (*See* Def.'s Reply at 6.) Because her allegations of prohibited personnel practices were raised for the first time in the instant litigation, Ms. Bishop is not excused from the administrative prerequisites to suit under the CSRA by virtue of presenting mixed case allegations. As Ms. Bishop failed to file a claim with the OSC, she failed to exhaust the administrative prerequisites to a suit under the CSRA. This failure divests the court of jurisdiction over Ms. Bishop's claims alleging prohibited personnel actions, and as such, they are due to be dismissed.

       2.    Claims brought pursuant to §§ 1981 and 1983.

The defendant argues, and Ms. Bishop concedes, that the claims alleging racial discrimination and brought pursuant to §§ 1981 and 1983 are not cognizable against an agency of the federal government. As such, these claims are due to be dismissed.

       3.    State law claims.

The defendant argues that Ms. Bishop's state law claims alleging negligent retention, negligent supervision, and negligent infliction of emotional distress are due to be dismissed because they are preempted by the CSRA. *See Broughton v. Courtney*, 861 F.2d 639 (11th Cir. 1988). In *Broughton*, the Eleventh Circuit held that

where a plaintiff's state law claims "are within the scope of the coverage of the CSRA, then the claims . . . are preempted by the CSRA." *Broughton*, 861 F.2d at 643. To determine whether Ms. Bishop's state law claims are preempted in this case, the court must consider whether the actions being challenged by Ms. Bishop in her state law claims are actions that could be challenged under the CSRA. If so, they are preempted.

The basis of the plaintiff's state law claims for negligent retention and negligent supervision is the "intentional, racially discriminatory acts" allegedly committed by the defendant. (Second Amended Compl. ¶¶ 50, 53.)  Her negligent infliction of emotional distress claims are based on the defendant's alleged "racially discriminatory acts and preselection of an applicant for employment." (Second Amended Compl. ¶¶ 56, 59.) The court is of the opinion that these claims could be raised as prohibited personnel practices under 5 U.S.C. § 2302, and as such, they are preempted by the CSRA.

The actions Ms. Bishop challenges include recommending certain applicants for employment positions and denying her promotions. Under 5 U.S.C. § 2302(a)(2)(A), personnel actions covered by the CSRA include, inter alia, appointments and promotions; thus, the actions challenged in this case are personnel actions within the meaning of the CSRA. Moreover, 5 U.S.C. § 2302(b)(1) makes it a prohibited personnel practice to "discriminate for or against any

employee or applicant for employment on the basis of race." 5 U.S.C. § 2302(b)(1). Additionally, it is a prohibited personnel practice under § 2302(b)(6) to "grant any preference or advantage not authorized by law, rule, or regulation to any employee or applicant for employment . . . for the purpose of improving or injuring the prospects of any particular person for employment." *Id.* § 2302(b)(6). Because the factual underpinnings of Ms. Bishop's state law claims would qualify as prohibited personnel practices under the CSRA, the practices in question could have been challenged under that statute. As such, the state law claims are preempted by the CSRA, and are therefore due to be dismissed. *See Broughton*, 861 F.2d at 643; *McDowell v. Cheney*, 718 F. Supp. 1531, 1546 (M.D. Ga. 1989).

   B.   Motion for summary judgment.

   Having disposed of Ms. Bishop's CSRA and state law claims, as well as any discrimination claims based on §§ 1981 or 1983, the court must turn to the defendant's motion for summary judgment as to the balance of the claims raised in the second amended complaint. Ms. Bishop alleges that she was unlawfully discriminated against on the basis of her race, and was retaliated against for engaging in activity protected by Title VII. The court will address each of these remaining claims in turn.

1.   Race discrimination.

    a.   The legal framework.

Ms. Bishop alleges that she was subjected to disparate treatment discrimination in the terms and conditions of her employment. In other words, Ms. Bishop contends that CNS intentionally discriminated against her because of her race. "Whether an employer intentionally discriminated against an employee . . . is a question of fact, which may be proved either through direct or circumstantial evidence." *EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002) (citation omitted). Direct evidence of discrimination is evidence that, "if believed, proves [the] existence of [a] fact in issue without inference or presumption." *Burrell v. Bd. of Trustees of Ga. Military College*, 125 F.3d 1390, 1393 (11th Cir. 1997).

Absent direct evidence of discriminatory intent, an employee may prove her case through circumstantial evidence, using the familiar burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* burden-shifting analysis, the plaintiff creates a rebuttable presumption of discrimination by proving a prima facie case of discrimination, which consists of proof that she was: (1) a member of a protected class; (2) qualified for the position; (3) subjected to an adverse employment action; and (4) treated differently than a similarly situated individual outside the protected class.

*Kelliher v. Veneman*, 313 F.3d 1270, 1275 (11th Cir. 2002). The defendant can rebut the presumption of disorimination by producing evidence of a legitimate, non-discriminatory reason for the challenged employment action. *Kelliher*, 313 F.3d at 1275. Once the presumption is rebutted, the defendant is entitled to summary judgment unless the plaintiff proffers evidence sufficient to permit a reasonable factfinder to conclude that the reasons articulated by the defendant were mere pretext for discrimination. *Id.*

> b.   Prima facie case.

Ms. Bishop alleges that she was the victim of racial discrimination when she was not selected for the State Program Director position in 1999 and again in 2002. The court is of the opinion that Ms. Bishop has established a prima facie case of discrimination with respect to each of these occasions; Ms. Bishop is African-American, she was rated qualified for the positions by CNS, she did not receive the promotions, and on both occasions a Caucasian was awarded the promotion. Therefore, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for failing to promote Ms. Bishop on each occasion.

> c.   Legitimate, non-discriminatory reasons and proof of pretext.

The defendant has met its burden of articulating legitimate, non-discriminatory reasons for selecting Ms. Reeder and Ms. Platt, rather than Ms. Bishop, for the State Program Director position:

Ms. Reeder was selected based on her extensive management experience, and Ms. Platt was selected because of the successful work she performed as a Senior Program Officer, and her supervisory skills. To withstand·the motion for summary judgment, Ms. Bishop must raise a genuine issue of material fact as to the veracity of these reasons so that a reasonable factfinder could conclude that the articulated reasons are mere pretext for discrimination.

Ms. Bishop seeks to establish pretext by evidence that she was more qualified for the position than the individuals selected, which she claims leads to the inescapable conclusion that the real reason for her non-promotion must have been racial discrimination. "In a failure to promote case, a plaintiff cannot prove pretext by simply showing that she was better qualified than the individual who received the position that she wanted." *Lee v. GTE Fla., Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000). Ms. Bishop must prove that she was "clearly more qualified than" Ms. Reeder and Ms. Platt such that the disparities between their qualifications "are so apparent as virtually to jump off the page and slap you in the face." *Lee*, 226 F.3d at 1254. In other words, for Ms. Bishop to prevail at the summary judgment stage, she must establish that the disparities between her qualifications and those of Ms. Reeder and Ms. Platt are "so great that a reasonable fact-finder could infer that [CNS] did not believe [Ms. Reeder and Ms. Platt] to be better qualified." *Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1268.

The court is of the opinion that Ms. Bishop's conclusory assertions that she had more experience with CNS's programs than Ms. Reeder, and the lone email statement by Ms. Platt, apparently made in jest, that employees might find it more productive to contact Ms. Bishop than to contact Ms. Platt, do not establish Ms. Bishop was so clearly more qualified for the position than Ms. Reeder and Ms. Platt that a reasonable juror could infer discriminatory intent from the comparison. *See Lee*, 226 F.3d at 1255. "Quite simply, [Ms. Bishop's] evidence does not rise to the level of proof that is required when an employee attempts to prove pretext by showing she was substantially more qualified than the person promoted." *Id.* The defendant's selection of Ms. Reeder and Ms. Platt was based on its business judgment of which person was best qualified, and the court is not "in the business of adjudging whether employment decisions are prudent or fair." *Rojas v. Fla.*, 285 F.3d 1339, 1342 (11th Cir. 2002). Because Ms. Bishop has failed to produce evidence from which a reasonable factfinder could find that the defendant's proffered reasons for failing to promote her are mere pretext for discrimination, summary judgment as to this claim is due to be granted.[7]

    2.    Retaliation.

---

[7]Nor does the fact that Ms. Reeder seems to have had advance notice of the job openings in 1999 indicate that the defendant's articulated reason for hiring Ms. Reeder is pretext for discrimination. That fact indicates only that the defendant wished to hire *Ms. Reeder* for one of the open positions.

a.   The legal framework.

Because the plaintiff has presented no direct evidence of retaliatory intent, she must establish her retaliation claim through circumstantial evidence using the burden-shifting analysis for retaliation claims. To establish a prima facie case of retaliation, the plaintiff must show: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there was a causal link between her protected activity and the adverse employment action. *Bass v. Bd. of County Comm'rs*, 256 F.3d 1095, 1117 (11th Cir. 2001) (citations omitted). If she establishes a prima facie case of retaliation, the defendant must proffer a legitimate, non-discriminatory reason for the adverse employment action to rebut the presumption of retaliation. *Holifield*, 115 F.3d at 1566. If the defendant offers a legitimate reason for the employment action, the plaintiff must demonstrate that the proffered explanation is a pretext for retaliation. *Id*.

b.   Prima facie case.

The defendant concedes, and the court agrees, that the plaintiff can establish a prima facie case of retaliation related to her non-promotion in 2002. Specifically, Ms. Bishop engaged in protected activity when she filed her formal complaint in 2000 challenging her 1999 non-selection for the State Program Director position, and she was not selected for the State Program Director position in 2002, thus satisfying the first and second elements of

her prima facie case. Moreover, the court is satisfied that the plaintiff has produced sufficient evidence to establish a causal connection between her protected activity and the adverse action. The requisite causal link can be established by proof that the protected activity and the adverse action are not completely unrelated. *See Pennington v. Huntsville*, 261 F.3d 1457, 1466 (11th Cir. 1998). Because the record indicates that Mr. Kowalczyk, the decision-maker with respect to the 2002 non-selection, knew Ms. Bishop had filed her complaint in 2000, the court is of the opinion that Ms. Bishop has established that the two events are not completely unrelated. Therefore, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for Ms. Bishop's non-selection.

c.   Legitimate, non-discriminatory reason and proof of pretext.

As described above, the defendant has articulated a legitimate, non-discriminatory reason for promoting Ms. Platt rather than Ms. Bishop: the agency was pleased with Ms. Platt's successful work as a Senior Program Officer and perceived her as having excellent supervisory skills. Moreover, as explained above, the plaintiff has failed to produce any evidence from which a reasonable factfinder could conclude that this reason is pretextual. Ms. Bishop has failed to establish that she was so clearly better qualified for the position than Ms. Platt that the selection of Ms. Platt reasonably leads to the inference that Ms.

Page 21 of 22

Bishop's non-selection was retaliatory. In the absence of any evidence from which a reasonable factfinder could conclude that Ms. Bishop was not selected for the State Program Director position in 2002 in retaliation for her prior complaint of discrimination, the defendant's motion for summary judgment is due to be granted as to the retaliation claim. *See Chapman v. AI Transport*, 229 F.3d 1012, 1024-25 (11th Cir. 2000) (en banc).

V.   CONCLUSION.

In sum, the court is of the opinion that the motion to dismiss is due to be granted as to the plaintiff's CSRA claims, §§ 1981 and 1983 claims, and state law claims. Furthermore, the motion for summary judgment is due to be granted as to the plaintiff's Title VII discrimination and retaliation claims. The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this _____ 15 _____ of  July, 2003.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE